**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**ANTHONY BROOKS,**

**Defendant.**

**Criminal Action No. 18-29 (JEB)**

**MEMORANDUM OPINION**

Less than three years into his ten-year prison sentence, Defendant Anthony Brooks moves for compassionate release, citing asthma and a heart condition as increasing the likelihood that he will suffer significantly if he contracts COVID-19 while incarcerated. According to him, these risk factors constitute "extraordinary and compelling" reasons meriting early release. Because Brooks has not satisfied the high burden the statute requires, the Court will deny the Motion, but will do so without prejudice so that he may renew his efforts down the line should his underlying circumstances change.

## I. Background

This Court sentenced Brooks in 2018 to ten years in prison after his guilty plea to two counts of transportation with the intent to engage in criminal sexual activity. See ECF No. 33 (Plea Agreement). Brooks had twice picked up a 14-year-old girl, whom he was mentoring, from her home in the District and driven her to his home in Maryland to have sex. See ECF No. 34 (Statement of Offense) at 2–4. The ten years constituted the mandatory minimum punishment. See Plea Agreement at 1; see also 18 U.S.C. § 2423(a). In imposing only that term, the Court varied substantially from the Sentencing Guidelines, which had proposed a sentence of between 210 and 262 months. See ECF No. 50 (Statement of Reasons).

In early 2020, the COVID-19 pandemic struck America, infecting millions and, as of this writing, causing the deaths of over 270,000 people. Prisoners were put in a particularly perilous position, often unable to isolate or take other appropriate precautionary measures. At FCI Danbury, where Brooks is incarcerated, at least 84 out of 900 tested inmates have contracted the virus to date, see COVID-19 Inmate Test Information, BOP, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2020), over double the national infection rate. See, e.g., Coronavirus in the U.S.: Latest Map and Case Count, N.Y. Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited Dec. 7, 2020).

It was in this context that, in April, Brooks filed his first Motion for Compassionate Release, citing his increased risk of a severe virus reaction given his "serious heart condition" and asthma. See ECF No. 53 (First Def. Mot.), ¶ 7. The Court denied that Motion without prejudice, awaiting the results of a concurrent civil proceeding in the District of Connecticut, which concerned prison conditions for all Danbury inmates and might have afforded Brooks relief. See Martinez-Brooks v. Easter, 459 F. Supp. 3d 411, 454–56 (D. Conn. 2020). In May, that litigation resulted in a temporary restraining order requiring the Warden of FCI Danbury to identify inmates at increased risk for a severe reaction in order to prioritize them for transfer to home confinement. Id. Inmates "who have any . . . condition[] specifically identified by the United States Centers for Disease Control as putting them at higher risk for severe illness from COVID-19" were to be prioritized — for example, those with "chronic lung disease including moderate to severe asthma" and "serious heart conditions, including congestive heart failure, coronary artery disease, congenital heart disease, cardiomyopathy, and/or pulmonary hypertension." Id. at 454. A BOP "Home Confinement Committee" has since examined potential inmates — including Brooks — for transfer to home confinement and, "informed by

input from a medical clinician who examined each inmate's institutional health records," suggested or denied home confinement in each case. See ECF No. 64 (Gov. Suppl.) at 2. Brooks was not recommended for home confinement because he was assessed to "not have any risk factors that would put him at a higher risk of developing severe illness as a result of COVID-19 based on CDC guidelines." Id. at 2–3 (quoting ECF No. 64-1 (Brooks COVID-19 Home Confinement Review Sheet)). Still housed at FCI Danbury, he then filed a Second Motion for Compassionate Release citing the same grounds as his first — namely, that the dangerous conditions at the facility, combined with his "serious heart condition" and "chronic asthma," create extraordinary and compelling reasons meriting his early release. See ECF No. 59 (Second Def. Mot.), ¶ 2.

## II. Legal Standard

Federal courts generally "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), aside from "a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 527 (2011). One such exception provides for compassionate release, which defendants may seek after exhausting administrative remedies. See 18 U.S.C. § 3582(c)(1)(A) (as modified by the First Step Act of 2018). This section allows courts to reduce a final sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable" if "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Id.

In its applicable pre-COVID policy statement, the Sentencing Commission offers examples of "extraordinary and compelling reasons" that center on terminal illness, deteriorating health and inability to care for oneself, and incapacitation of family members. See U.S.S.G.

§ 1B1.13(1)(A)–(C). In light of the COVID crisis, however, courts have invoked Section 1B1.13(1)(D), which acknowledges that reasons "other than, or in combination with, the reasons described" in (A)–(C) may present extraordinary and compelling circumstances. Courts across the country have determined that the COVID-19 pandemic may constitute such an additional reason, especially when the defendant is housed at a facility experiencing a COVID outbreak and suffers from a health condition that increases the likelihood he will experience serious symptoms upon contracting the virus. See, e.g., United States v. Morris, No. 12-154, 2020 WL 2735651, at *7 (D.D.C. May 24, 2020) (finding extraordinary and compelling circumstances when medical conditions make defendant "particularly vulnerable to severe COVID-19 infection" in light of Section 1B1.13(1)'s focus on self-care); United States v. Johnson, 464 F. Supp. 3d 22, 38 (D.D.C. 2020) ("The compelling need for [the defendant], in particular, to be released from . . . custody relates primarily to [his] heightened risk of having serious medical complications if he were to contract COVID-19."); United States v. Lacy, No. 15-30038, 2020 WL 2093363, at *6 (C.D. Ill. May 1, 2020) (finding extraordinary and compelling reasons given defendant's medical conditions in combination with COVID-19 pandemic); United States v. McCarthy, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) (finding extraordinary and compelling reasons when defendant's medical conditions "substantially increase his risk of severe illness if he contracts COVID-19"). Courts rarely, if ever, hold that the pandemic alone means that an inmate who is not particularly susceptible to severe symptoms should be released. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release . . . .").

If the court finds that extraordinary and compelling reasons merit early release, it must then consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are

applicable," U.S.S.G § 1B1.13; 18 U.S.C. § 3582(c)(1)(A), "presumably with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence." Johnson, 464 F. Supp. 3d at 30. If the factors allow it, a court may then modify the sentence to time served. See 18 U.S.C. § 3582(c)(1)(A).

## III. Analysis

At the outset, Brooks and the government now agree that he has cleared the hurdle of exhausting his administrative remedies. See ECF No. 60 (Opp.) at 8. The Court thus first considers whether Brooks has established that extraordinary and compelling circumstances warrant his release. Finding that he has not, it ends its inquiry there.

Defendant asserts that he has "chronic asthma" and "a serious heart condition." As to the first ailment, however, CDC guidelines report that only "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." People with Moderate to Severe Asthma, Centers for Disease Control and Prevention (Nov. 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. Brooks's claim that his asthma is "moderate to severe" appears only in his counsel's recitation of a discussion counsel purportedly had with a consulting physician, in which Defendant is characterized as having "moderate to severe asthma." Second Def. Mot., ¶ 5. His BOP medical records, conversely, do not seem to indicate that his asthma is at such an elevated level. See ECF No. 59-2; Opp. at 20–21 (noting that only a maintenance inhaler has been prescribed); see also Gov. Suppl. at 3 & n.1 (noting that Committee charged with identifying high-risk inmates in compliance with Martinez-Brooks TRO came to same conclusion). In the absence of a more reliable diagnostic indication of severity, the Court is unpersuaded that Brooks's asthma is severe

enough to place him at increased risk as identified by the CDC. See, e.g., United States v. Torres, No. 18-414, 2020 WL 3498156, at *8 (E.D. Pa. June 29, 2020) (finding no extraordinary and compelling reasons for release when defendant's symptoms did not match his claims of severe asthma).

Brooks's "serious heart condition" similarly fails to qualify under CDC guidelines as placing him at increased risk of developing serious symptoms. The CDC reports that having heart failure, coronary artery disease, cardiomyopathies, or pulmonary hypertension "increases your risk of severe illness from COVID-19" and that "[h]aving other cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure) or stroke, might increase your risk of severe illness from COVID-19." Heart Conditions and Other Cardiovascular and Cerebrovascular Diseases, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (Dec. 1, 2020). But Brooks does not suggest that he suffers from any of these conditions, offering only a report indicating certain "trace" and "mild" heart symptoms without diagnosis. See ECF No. 53-3. The Court finds this showing, too, insufficient to indicate that he is at heightened risk of experiencing severe symptoms should he contract COVID-19. As neither of these conditions, standing alone or in concert, qualifies as an extraordinary and compelling reason, release is not appropriate.

In addition, the conditions at FCI Danbury — although certainly alarming at the outset of the pandemic — have improved substantially since that time. While the facility reported 69 total cases in May, that figure increased by only fifteen in the following seven months. Compare Martinez-Brooks, 459 F. Supp. 3d at 418 (citing 69 total positive cases as of May) with COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (citing 84 total positive cases as

of December). As of September 16, there were only 2 active cases of COVID-19 among inmates at Danbury and no active cases among staff members. See Gov. Suppl. at 3.

Brooks last contends that his health status combined with the spread of the virus mean that his conditions of confinement violate the Eighth Amendment. As the government correctly rejoins, any such constitutional claim must be raised via a separate civil suit and cannot be part of a compassionate-release motion in the underlying criminal case. Courts all over the country have concurred. See, e.g., United States v. Banks, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) ("We agree with the District Court that a motion filed in [the defendant's] criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); United States v. Smith, 2020 WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases) ("With respect [to] Smith's argument concerning the Eighth Amendment's prohibition on the infliction of cruel and unusual punishments, a compassionate release motion is not the appropriate mechanism or vehicle to raise such claims of alleged constitutional violations."). Acknowledging this in his Reply, see ECF No. 62 (Reply) at 1, Brooks does not press the point further.

All of this said, the Court is mindful that Brooks is serving a very stiff sentence and that the government does not always charge a mandatory-minimum offense in similar situations. The length of his term is particularly notable given that other factors at his sentencing — *e.g.*, his lack of criminal record and presence of positive life accomplishments — would have militated in favor of a shorter period of incarceration. The Court will deny the Motion without prejudice so that if his health or prison conditions change, especially after he has served a greater percentage of his sentence, he may renew his claim.

## IV. Conclusion

As Brooks does not meet the extraordinary-and-compelling standard warranting compassionate release, the Court will deny his Motion. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: December 7, 2020