UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>ANTHONY BROOKS,<br><br>Defendant. | Criminal No. 18-29 (JEB) |

### MEMORANDUM OPINION

Defendant Anthony Brooks is serving a ten-year mandatory-minimum sentence for transporting a minor with the intent to engage in criminal sexual activity. He now moves for the fourth time for compassionate release on the grounds that his medical conditions and the situation in his prison facility render him susceptible to contracting COVID-19 and suffering severe symptoms. Brooks argues that these conditions constitute "extraordinary and compelling reasons" warranting his release pursuant to 18 U.S.C. § 3582(c)(1)(A). Because Defendant, who has been vaccinated and has recovered from a COVID-19 infection, has not demonstrated that he meets the statute's requirements, the Court will again deny the Motion without prejudice. If his underlying circumstances change, he may seek relief in the future.

**I.   Background**

   A.   Factual Background

In early 2020, the United States was struck by the COVID-19 pandemic, which, as of this writing, has caused the deaths of over one million people. See Coronavirus in the U.S.: Latest Map and Case Count, The New York Times, https://nyti.ms/3NvdBLm, (last visited June 29, 2022). Incarcerated individuals have been threatened in particular, given their inability to isolate

1

or take other precautionary measures on their own. At the Federal Correctional Institution in Danbury, Connecticut, where Brooks is housed among 1,024 inmates, there have been a total of 417 positive COVID-19 tests since the outset of the pandemic. See COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus/ (last visited June 29, 2022) (noting that number of positive tests does not equal number of cases because inmates can be tested more than once); FCI Danbury Facility Information, BOP, https://www.bop.gov/locations/institutions/dan/ (last visited June 29, 2022). In addition, 934 of the 1,024 total inmates in the facility have been fully vaccinated. See COVID-19 Inmate Test Information, BOP, https://www.bop.gov/coronavirus (last visited June 29, 2022) (noting that these data do not include booster vaccinations). Today, there are zero inmates infected with COVID-19 at FCI Danbury. See COVID-19 Cases, BOP, https://www.bop.gov/coronavirus (last visited June 29, 2022). Since the outset of the pandemic, one inmate at FCI Danbury has died, and 318 have recovered after being infected with COVID-19. Id.

  B. Procedural History

  Brooks filed his first Motion for Compassionate Release in April 2020, citing a "serious heart condition" and asthma as health conditions that increased his risk of experiencing severe COVID-19 symptoms. See ECF No. 53 (First Def. Mot.), ¶ 7. The Court denied that motion without prejudice, pending the results of a concurrent civil proceeding concerning prison conditions for all Danbury inmates. See Minute Order of April 23, 2020; Martinez-Brooks v. Easter, 459 F. Supp. 3d 411, 454–56 (D. Conn. 2020). That litigation resulted in an order requiring the Warden of FCI Danbury to identify inmates at increased risk of a severe reaction to COVID-19 in order to prioritize them for transfer to home confinement. Id. In the Warden's analysis, Brooks was not recommended for home confinement because he was assessed to "not

have any risk factors that would put him at a higher risk of developing severe illness as a result of COVID-19 based on CDC guidelines." ECF No. 64 (Gov. Suppl.) at 3 (quoting ECF No. 64-1 (Brooks COVID-19 Home Confinement Review Sheet)).

Brooks then filed a Second Motion for Compassionate Release in June 2020, generally citing the same grounds as his first — namely, that the dangerous conditions at the facility, combined with his "serious heart condition" and "chronic asthma," created extraordinary and compelling reasons meriting his early release. See ECF No. 59 (Second Def. Mot.), ¶ 2. The Court in December 2020 denied that Motion without prejudice again, concluding that Defendant's heart and asthma conditions did not qualify as extraordinary and compelling reasons warranting his release. United States v. Brooks, No. 18-29, 2020 WL 7186157, at *2–3 (D.D.C. December 7, 2020). One month later, Brooks filed a third Motion for Compassionate Release, see ECF No. 67 (Third Def. Mot.), which the Court also denied on the basis that his health conditions and the COVID-19-related conditions at FCI Danbury did not require his release, especially following the national rollout of the COVID-19 vaccine. See ECF No. 73 (Order) at 1–2.

Defendant is back once more, this time with his fourth Motion for Compassionate Release, contending that his medical conditions and FCI Danbury's failure to protect him and other inmates from the COVID-19 virus qualify as extraordinary and compelling reasons meriting his release. See ECF No. 76 (Fourth Def. Mot.) at 3–5. In response, the Government asserts that Brooks cannot challenge the constitutionality of his prison conditions in this proceeding, see ECF No. 79 (Govt. Opp.) at 25–26, and that he fails to establish that his health conditions meet the exacting standard. Id. at 15–21.

3

## II.  Legal Standard

Federal courts "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), aside from "a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011).  One such exception provides for compassionate release, which defendants may seek after exhausting administrative remedies.  See 18 U.S.C. § 3582(c)(1)(A) (as modified by the First Step Act of 2018).  This section allows a court to reduce a final sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  Id.

In its applicable pre-COVID policy statement, the Sentencing Commission offers examples of "extraordinary and compelling reasons" that center on terminal illness, deteriorating health and inability to care for oneself, and incapacitation of family members.  See U.S.S.G. § 1B1.13, cmts. (1)(A)–(C).  In light of the COVID-19 crisis, however, courts have invoked Section 1B1.13, cmt. (1)(D), which acknowledges that reasons "other than, or in combination with, the reasons described" in (A)–(C) may present extraordinary and compelling circumstances.  Courts across the country have determined that the COVID-19 pandemic may constitute such an additional reason, especially when the defendant is housed at a facility experiencing a COVID outbreak and suffers from a health condition that increases the likelihood that he will experience serious symptoms upon contracting the virus.  See, e.g., United States v. Morris, No. 12-154, 2020 WL 2735651, at *7 (D.D.C. May 24, 2020) (finding extraordinary and compelling circumstances when medical conditions made defendant "particularly vulnerable to severe COVID-19 infection" in light of Section 1B1.13(1), cmt. (1)(A)'s focus on self-care); United States v. Johnson, 464 F. Supp. 3d 22, 38 (D.D.C. 2020) ("The compelling need for [the

4

defendant], in particular, to be released from . . . custody relates primarily to [his] heightened risk of having serious medical complications if he were to contract COVID-19."); United States v. Lacy, No. 15-30038, 2020 WL 2093363, at *6 (C.D. Ill. May 1, 2020) (finding extraordinary and compelling reasons given defendant's medical conditions in combination with COVID-19 pandemic); United States v. McCarthy, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) (finding extraordinary and compelling reasons when defendant's medical conditions "substantially increase his risk of severe illness if he contracts COVID-19"). Courts rarely hold that the pandemic alone means that an inmate who is not particularly susceptible to severe symptoms should be released. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release.").

If the court finds that extraordinary and compelling reasons merit early release, it must then consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable," U.S.S.G § 1B1.13; 18 U.S.C. § 3582(c)(1)(A), "presumably with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence." Johnson, 464 F. Supp. 3d at 30. When the factors allow it, a court may then modify the sentence to time served. See 18 U.S.C. § 3582(c)(1)(A).

### III. Analysis

#### A. Exhaustion of Administrative Remedies

The first requirement — namely, that Defendant exhaust all administrative remedies before a term of imprisonment can be modified — is not at issue in this case. The Government concedes that Brooks has satisfied his exhaustion requirements. See Govt. Opp. at 15. The Court thus considers only whether he has established extraordinary and compelling reasons

warranting his release.

### B. Extraordinary and Compelling Reasons

In requesting compassionate release, Defendant cites both his health and the conditions at FCI Danbury. The Court considers each separately.

#### 1. *Health Conditions*

Brooks alleges that if he is infected with COVID-19, his "serious heart condition" and "chronic asthma" will threaten his life. See Fourth Def. Mot. at 1–2. The Centers for Disease Control states that "moderate-to-severe" asthma increases the likelihood that an affected individual will be hospitalized with a COVID-19 infection. See People with Moderate to Severe Asthma, Centers for Disease Control and Prevention (April 7, 2021), https://bit.ly/3HZcy5e. As the Court has previously held, however, Defendant's claim that his asthma is "moderate-to-severe" is unsupported by his medical records from the Bureau of Prisons, which do not suggest that his asthma is elevated. Brooks, 2020 WL 7186157, at *3; ECF No. 59-2 (Def. Medical Records). Brooks offers no reason here for the Court to change its findings with respect to his asthma.

Defendant's "serious heart condition" also fails to qualify as an extraordinary and compelling reason. The CDC states that heart conditions including "heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension)" can increase the severity of COVID-19 symptoms. See People with Certain Medical Conditions, Centers for Disease Control and Prevention (May 2, 2022), https://bit.ly/3QU34wh. Yet, the Court earlier noted that Brooks's medical report from the Federal Bureau of Prisons only indicates "certain 'trace' and 'mild' heart symptoms without diagnosis." Brooks, 2020 WL 7186157, at *3. The Court has also found that Defendant's blood pressure fails to consistently reach the required

6

severity.  See Order at 1 (noting that Brooks has had normal blood-pressure readings in every test since a high blood-pressure reading in September 2020).  Defendant also offers no compelling reason to revise the Court's findings with respect to his heart conditions.

Brooks, moreover, received his second dose of the Moderna vaccine on May 17, 2021. See Govt. Opp. at 18.  As the Court has previously stated, being vaccinated substantially diminishes one's risk of contracting COVID-19 or experiencing severe symptoms.  See Order at 2.  In fact, "Defendant . . . tested positive for COVID-19 in January 2022 but was asymptomatic."  Govt. Opp. at 19.  Courts repeatedly find that an inmate's recovery from COVID-19 balances heavily against finding extraordinary and compelling reasons for a sentence reduction or release.  See United States v. Winston, No. 94-296, 2021 WL 2592959, at *4 (D.D.C. June 24, 2021) (denying motion for compassionate release in part because defendant had contracted COVID-19 and remained asymptomatic); United States v. Williams, No. 11-172, 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020) (providing that, although COVID-19 diagnosis "does not moot [a] motion for compassionate release," fact that defendant "successfully weathered a previous infection without the need for hospitalization and without any apparent lasting effects" weighed against his argument that his conditions were extraordinary and compelling); United States v. Wagner, No. 18-155(1), 2020 WL 4034009, at *4 (E.D. Tex. July 15, 2020) (holding that after defendant contracted COVID-19 and recovered, "the risks of complications or death that he contend[ed were] extraordinary and compelling reasons for compassionate release [were] no longer germane"); but see United States v. King, No. 18-318, 2021 WL 880029, at *4 (D.D.C. Mar. 9, 2021) (granting defendant's motion for compassionate release because of his medical conditions, new virus variants, risk of reinfection, his facility's poor control of the virus, and the time elapsed since his last infection).

7

The Court thus concludes that Defendant's health conditions alone do not qualify as extraordinary and compelling reasons warranting his release, especially considering his previous asymptomatic infection and vaccinations.

2. *Conditions at FCI Danbury*

Brooks also emphasizes that BOP has failed to protect inmates at FCI Danbury from the COVID-19 pandemic. His Motion states that at the time of its filing, on February 28, 2022, there were three active inmate cases and four active staff cases of COVID-19. See Fourth Def. Mot. at 3. He also alleges that more than a dozen inmates tested positive for COVID-19 and were then returned to their dorms with other inmates, including Brooks, who, after testing positive for COVID-19, was placed in a dormitory that contained bunk beds separated by only three feet. Id. The Motion also cites visits by Senators Richard Blumenthal and Chris Murphy to the facility in January 2022, who commented that they were denied access to certain parts of the facility while cases were high. Id. at 3–4.

In response, the Government contends that allegations concerning the conditions of Defendant's confinement are not properly before the Court because challenges to the constitutionality of BOP's actions must be filed as a civil suit separate from the underlying criminal case. See Govt. Opp. at 25. This position mischaracterizes Brooks's argument, however. His Motion does not offer a constitutional challenge; instead, he attempts to invoke the conditions as extraordinary and compelling reasons for his release.

Courts regularly take into consideration a prison facility's failure to protect inmates from COVID-19 when deciding whether to grant a motion for compassionate release. See, e.g., United States v. Babbitt, 496 F. Supp. 3d 903, 909 (E.D. Pa. 2020) (stating that courts should consider "the circumstances of the COVID-19 pandemic, the defendant's health conditions, . . .

and the risk of contracting COVID-19 at the defendant's facility," but noting that no single factor is dispositive) (emphasis added). Instances in which a facility's conditions influenced a court's decision on a motion for compassionate release, however, involve far worse conditions than the situation at FCI Danbury. See, e.g., id. at 912 (granting release from facility that failed to test and isolate defendant when there had been almost one thousand cases and nine deaths caused by COVID-19 in half a year); United States v. Keys, No. 16-234, 2020 WL 6700412, at *2 (E.D. Cal. Nov. 13, 2020) (granting release in part because over 574 total inmates had been infected and ten inmates had died from COVID-19 in the facility); United States v. Patrick, No. 17-38, 2021 WL 164554, at *4 (E.D. Ky. Jan. 19, 2021) (granting release in part because over 36% of facility's inmates were infected at time of opinion).

At the time Defendant filed this Motion, there were four active staff cases at FCI Danbury and three active inmate cases out of the 1,029 total inmates incarcerated. See Govt. Opp. at 21. In total, 318 inmates in FCI Danbury have recovered from the virus since the beginning of the pandemic. See COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus (last visited June 29, 2022). In addition, around 91% (934 of 1,024) inmates have been vaccinated twice, further reducing Defendant's risk of contracting the virus again while incarcerated. See id.; see also United States v. Mata, No. 15-44, 2021 WL 851876, at *2 (D. Or. Mar. 5, 2021) (finding that there were no extraordinary and compelling reasons for release at FCI Danbury, in part because facility was adequately controlling COVID-19).

While no clearly established line has been drawn by the courts, the numbers cited in Defendant's Motion concerning the situation at FCI Danbury are nowhere near the same high-risk level as the previously mentioned cases, nor do they seem to indicate that the facility was

9

experiencing a COVID-19 outbreak.  The facility, furthermore, is experiencing nothing of concern at the time of this Opinion, as zero inmates at FCI Danbury are currently infected.  See COVID-19 Cases, BOP, https://www.bop.gov/coronavirus (last visited June 29, 2022).  Even if the Court were to find that the facility's conditions qualify as extraordinary and compelling reasons for Defendant's release, courts have found that prison conditions in themselves are not dispositive and should be considered alongside the inmate's health conditions.  See, e.g., United States v. Stephens, No. 16-20677, 2021 WL 243159, at *2 (E.D. Mich. Jan. 25, 2021) (denying compassionate release to inmate despite outbreak of COVID-19 in prison because he lacked requisite medical risk factors).  In any event, the Court finds that the conditions in FCI Danbury do not rise to a level where they might be considered extraordinary and compelling.

### IV. Conclusion

As Brooks does not meet the extraordinary-and-compelling standard warranting compassionate release, the Court will deny his Motion.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 29, 2022